IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FCSTONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-cv-508 |
| | ) | |
| SCOTT A. ADAMS, ROBERT W. WALFORD, | ) | |
| SAMANTHA GARBERS-ADAMS and | ) | |
| LISA WALFORD, | ) | |
| | ) | |
| Defendants. | ) | |

## FCSTONE, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff, FCStone, LLC ("FCStone"), is entitled to summary judgment on Counts I and II of its Amended Complaint because no genuine issue of material fact exists regarding the breach by Defendant, Robert W. Walford ("Walford"), of his obligations to FCStone under a Promissory Note, Forbearance Agreement and Assignment of Income Tax Refunds. In view of this undisputed breach, FCStone has declared both Walford and Defendant, Scott A. Adams ("Adams"), in default and has accelerated the amounts owing under the Promissory Note such that their $127,000,000 indebtedness is immediately due and owing. As set forth more fully below, given the absence of any material factual issue, FCStone is entitled to judgment as a matter of law on Counts I and II.

## II. SUMMARY OF UNDISPUTED FACTS

### A. Defendants Accumulate $127,000,000 in Trading Losses

FCStone is a futures commission merchant ("FCM"), and acts as a clearing firm for customers engaged in commodities trading. (Statement of Undisputed Facts ("Stmt.") ¶ 9).

Adams and Walford were customers of FCStone and engaged in commodities trading through accounts maintained at FCStone. (*Id.* at ¶ 10). As a result of their trading activities, Adams and Walford accumulated an account deficit of approximately $127,000,000 (the "Deficit"). (*Id.* at ¶ 11). Adams and Walford acknowledged their debt to FCStone, but requested that FCStone forbear from collecting on the indebtedness. (*Id.*)

### B.  FCStone Agrees To Forbear And Receives Assignment Of Tax Refunds

On March 11, 2009, the parties executed: (i) a Forbearance Agreement; (ii) a Promissory Note; and (iii) an Assignment of Income Tax Refunds (collectively, the "Settlement Agreement"). (*Id.* at ¶ 12). In entering into the Settlement Agreement, the parties agreed, *inter alia*, that Adams and Walford would prepare and file their respective 2008 and 2009 federal, state and local tax returns so as to include the trading losses that had led to the Deficit. (*Id.* at ¶ 13). In addition, Adams and Walford agreed that they each would prepare and file amended tax returns for 2005-2007 and any other prior years allowed by law in order to carry back the trading losses to the fullest extent permissible. (*Id.*) The parties contemplated that Adams and Walford would receive tax refunds for 2008 and prior years totaling almost $15 million. (*Id.* at ¶ 14).

In the Forbearance Agreement, Adams and Walford agreed that the proceeds from the anticipated tax refunds would be applied to the debt owed to FCStone. (*Id.* at ¶ 15). Specifically, in the Forbearance Agreement, Adams and Walford agreed that two-thirds of any tax refund proceeds would be paid to FCStone.[1] (*Id.*) The remaining one-third of any tax refund proceeds was required to be deposited in a new trading account (the "New Trading Account") that Adams and Walford agreed to establish and pledge to FCStone. (*Id.*) The receipt of the tax

---

[1] The Forbearance Agreement provided a one-time "hold back" for Walford such that he was entitled to retain up to $600,000 of the proceeds from any federal tax refund for 2008. (*Id.* at ¶ 15).

CHIC_4704169.3

refund proceeds was the primary means through which FCStone would recoup even a small portion of the debt owed by Adams and Walford.  (*Id.* at ¶ 16).  As such, Adams and Walford each executed an Assignment of Income Tax Refunds which provided that Adams and Walford "shall deliver to [FCStone] each Refund [Adams or Walford] receives ***within 5 business days of receiving such Refund.***"  (*Id.* at ¶ 17) (emphasis added).

The Promissory Note jointly executed by Adams and Walford provided that an Event of Default resulted from, among other things, "any failure by Adams ***or*** Walford to perform his obligations under the Forbearance Agreement." (*Id.* ¶ 18) (emphasis added).  The Promissory Note further provided that:

> Upon the occurrence of any Event of Default hereunder …
> immediately and automatically, (a) the entire unpaid amount of this
> Note shall become immediately due and payable without
> presentment, demand, notice or legal process of any kind …

(*Id.* at ¶ 19).  Finally, the Promissory Note provided that upon the occurrence of an Event of Default, "Adams and Walford agree to pay all expenses, including, but not limited to, reasonable attorneys' fees, court costs … and similar expenses incurred in enforcing any of [FCStone's] rights hereunder …"  (*Id.* at ¶ 20).

As consideration for the Settlement Agreement, FCStone agreed to forbear – and did, in fact, forbear – from undertaking to collect the $127 million debt owed to it by Adams and Walford.  (*Id.* at ¶ 21).

### C.    Walford Fails To Pay FCStone Even The Undisputed Amounts Owing From His 2008 State Tax Refund Proceeds

On October 23, 2009, Walford received and deposited a New York state tax refund for 2008 in the amount of $305,784.  (*Id.* at ¶ 22).  Likewise, on November 13, 2009, Walford received a federal tax refund for 2008 in the amount of $843,846.  (*Id.*)  According to the Settlement Agreement, any amounts owed to FCStone were required to be paid ***within 5***

3

***business days of the receipt*** of these tax refund proceeds. (*Id.* at ¶ 23). Notwithstanding this requirement, at least 2-3 months passed between Walford's receipt of the above tax refunds and the filing of FCStone's original Complaint in this action. (*Id.* at ¶ 24). In fact, despite the fact that these two tax refunds were generated exclusively by the trading losses that gave rise to his indebtedness, Walford never paid *any* portion of these tax refund proceeds to FCStone. (*Id.* at ¶ 25).

Instead, both Adams and Walford have advised FCStone of their position that their wives – Defendants Samantha Garbers-Adams and Lisa Walford – are entitled to one-half of the proceeds of any tax refunds received (or to be received) as a result of the trading losses they incurred. (*Id.* at ¶ 26). Thus, with respect to his 2008 federal tax refund, Walford asserted that his wife was entitled to one-half of the proceeds ($421,923), and that he was entitled to retain the remainder pursuant to the "hold back" provision in the Forbearance Agreement. (*Id.* at ¶ 27). With respect to his 2008 New York state tax refund, Walford again contended that his wife was entitled to one-half of the proceeds ($152,892). (*Id.*)

Even accepting the position of Adams and Walford, however, Walford was minimally required to pay to FCStone two-thirds of the remaining half interest of his 2008 New York state tax refund.[2] (*Id.* at ¶ 28). Specifically, even if Walford's wife was entitled to one-half of the $305,784 received by them as their 2008 New York state tax refund, this would leave Walford with $152,892. (*Id.* at ¶ 29). Under the Settlement Agreement, Walford was required to pay two-thirds of this amount – *i.e.*, $101,928 – to FCStone within 5 business days of receipt of the

---

[2] FCStone vigorously disputes the position of Adams and Walford that their wives are entitled to one-half of any tax refund proceeds. For purposes of this Motion, however, all that matters is that Adams and Walford are in default under the Settlement Agreement even if their position is correct.

2008 New York state tax refund.  (*Id.*)  In other words, even under *their* theory, it is undisputed that Walford was required to pay at least $101,928 to FCStone no later than October 30, 2009. (*Id.* at ¶ 30).

Because Walford never paid *any* portion of his 2008 tax refund proceeds to FCStone, on January 25, 2010, FCStone filed its Complaint in this matter declaring both Adams and Walford in default and accelerating the full amount owing under the Promissory Note.[3]  (*Id.*)

## III.    ARGUMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute … will not defeat an otherwise properly supported motion."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48.  (1986) (emphasis in original).  In responding to a motion for summary judgment, the non-movant must come forward with affirmative evidence setting forth specific facts demonstrating that there is a genuine issue for trial.  *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 250.

---

[3] Although not the basis of this Motion, FCStone has filed an Amended Complaint detailing the recent admissions by Adams and Walford that they failed to fulfill their obligations under the Settlement Agreement to timely file amended tax returns for all prior years as allowed by law. (Am. Comp., ¶ 27).  Instead, Adams and Walford only filed amended federal and state tax returns in March 2010, almost one year after agreeing to do so.  (*Id*.).  Again, while not the basis of this Motion, these untimely filings by Adams and Walford constitute additional breaches of the Settlement Agreement.  In addition, Adams and Walford also breached the Settlement Agreement by failing to establish the New Trading Account and by failing to deposit one-third of Walford's claimed one-half interest in the 2008 New York state tax refund ($50,964) into such an account.  (Am. Comp., ¶ 26).  Taken together, the abject refusal of Adams and Walford to perform any of their material obligations under the Settlement Agreement in the nine months between the execution of the Settlement Agreement and the filing of this lawsuit indicates that they never intended to honor their commitments to FCStone.  (*See*, Am. Comp., ¶¶ 32-35).

5

Here, summary judgment on Counts I and II is appropriate because it is undisputed that an Event of Default under the Promissory Note occurred as a result of Walford's failure to pay to FCStone within five business days of receipt any portion of his 2008 New York state tax refund. Again, as described more fully below, even under the Defendants' theory, Walford owed a material sum from his 2008 New York state tax refund to FCStone.  As a result of Walford's default, FCStone was entitled to accelerate the amounts owing under the Promissory Note such that the entire indebtedness of Adams and Walford is immediately due and owing.[4]

A.      **FCStone Is Entitled to Judgment As A Matter Of Law on Count I**

1.      **Walford Committed A Material Breach of the Forbearance Agreement**

Under Illinois law, it is axiomatic that a party's failure to perform even a minor contractual term constitutes a breach.  *Fireman's Fund Mortgage Corp. v. Zollicoffer,* 719 F.Supp. 650, 655 (N.D. Ill. 1989) (collecting Illinois authority).  A breach is considered material "when it amounts to a failure to perform an important or substantial obligation under the contract."  *Id*.  This principal "finds its strongest application" in connection with a breach of an obligation to make payments under a note.  *Id*. at 656.  Indeed, as the *Fireman's Fund* court held, "Illinois courts have consistently held that breach of the duty to make payments under a contract is material," even where the failure to pay involved relatively minor amounts.  *Id*. at 656.  Here, there can be little question that Walford's failure to pay to FCStone within five (5) business days

---

[4] Count I of the Amended Complaint seeks relief against Walford for breach of contract, while Count II seeks identical relief as against Adams.  Because the Promissory Note provides that the liability of each is limited to one-half of the outstanding indebtedness, FCStone is seeking judgment under Counts I and II against each of Adams and Walford in the amount of $63.5 million, plus interest, costs and attorneys' fees.

6

of receipt even the undisputed amounts owing from his 2008 New York state tax refund (*i.e.*, $101,928), constituted a material breach of the Settlement Agreement.

First, Walford's duty to pay to FCStone its share of the 2008 New York state tax refund proceeds is undeniably a material obligation under the Settlement Agreement. Indeed, under the Settlement Agreement, FCStone's primary means of recovering even a fraction of the $127 million debt was Adams' and Walford's agreement to pursue and promptly pay over to FCStone substantial tax refund proceeds that would be generated by carrying back their trading losses. (Stmt. at ¶ 16). As such, the Forbearance Agreement included an express requirement that Adams and Walford each contemporaneously execute an Assignment of Income Tax Refunds ("Assignment"). (*See* Forbearance Agreement, § 2(c)). These Assignments acted as security for repayment of the Promissory Note and required payment of any tax refund proceeds to FCStone within five (5) business days of receipt.[5] Thus, Walford's duty to pay over such proceeds was unquestionably a material obligation under the Settlement Agreement.

---

[5] The language requiring Adams and Walford to pay over any tax refund proceeds within five (5) business days is contained in the last paragraph of the Assignments. (Stmt. at ¶ 17). Under Illinois law, because the agreements comprising the Settlement Agreement were entered into at the same time by the same parties as a resolution of the indebtedness of Adams and Walford, they should be construed as one contract. *See, e.g., Nelson v. John B. Colgrove & Co. State Bank*, 354 Ill. 408, 413, 118 N.E. 461 (1933) (holding that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction should be construed together "as if they were as much one in form as they are in substance."); *Int'l Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 448, 907 N.E.2d 478, 486 (3d Dist. 2009) (holding four documents entered into at the same time by the same parties as part of the same transaction was a single contract). Here, not only were each of the agreements comprising the Settlement Agreement executed at the same time, by the same parties in order to resolve the $127 million debt of Adams and Walford, both the Forbearance Agreement and Promissory Note expressly reference the Assignments executed by Adams and Walford. (*See* Forbearance Agreement, § 2(c) and Promissory Note, § 12). Consequently, the contractual obligation to pay the tax refund proceeds to FCStone within five (5) business days was an integral part of the Promissory Note and the Forbearance Agreement.

CHIC_4704169.3

Second, it is undisputed that Walford breached his duty to pay FCStone the specific sum of $101,928 from his 2008 New York sate tax refund.  Again, even accepting, for the sake of argument, Walford's contention that his wife was entitled to one-half of the $305,784 in proceeds from the 2008 New York state tax refund, there is no genuine factual dispute that Walford minimally was required to pay two-thirds of the remaining one-half (*i.e.*, $101,928), to FCStone no later than October 30, 2009.[6]  (Stmt. at ¶ 30).  There can be no argument that this amount is material.  *See In re Krueger*, 192 F.3d 733, 742 (7th Cir. 1999) (holding that a debtor's late payment of one $560 installment payment on a note was material); *see also Fireman's Fund*, 719 F. Supp. at 656 (holding that a failure to make four payments of $710 on mortgage was material and noting that the argument of defense counsel to the contrary, "flirts with Rule 11.").  Thus, because Walford never paid *any* portion of his 2008 New York state refund proceeds to FCStone, – even the $101,928 that was indisputably owing – he has materially breached his obligations under the Forbearance Agreement.

## 2.   Walford's Material Breach Was An Event of Default

The material breach of the Forbearance Agreement by Walford in turn constitutes an Event of Default under the Promissory Note.[7]  Under the Promissory Note, an Event of Default results from "any failure by Adams *or* Walford to perform his obligations under the Forbearance Agreement."  (Stmt. at ¶ 18) (emphasis added).  Upon the occurrence of an Event of Default, the

---

[6] Again, the total amount of the Walford's 2008 New York state tax refund was $305,784.  Assuming, solely for purposes of this Motion, that Walford's wife was entitled to one-half that would leave Walford with $152,892.  Under the Settlement Agreement, Walford was required to pay two-thirds of this amount – *i.e.*, $101,928 – to FCStone within five (5) business days of his receipt of this tax refund on October 23, 2009.  (Stmt. at ¶ 29).

[7] Again, under Illinois law, because each of the relevant agreements were executed at the same time, by the same parties and relate to the same matter, they are to be interpreted as one contract.  *Internat'l Supply*, 907 N.E. 2d at 486.

CHIC_4704169.3

Promissory Note then provides FCStone with various remedies. Among other things, the Promissory Note contains an "acceleration clause" such that upon the occurrence of an Event of Default, FCStone was entitled immediately and without notice to accelerate the entire amount owing as to both Adams and Walford. (Stmt. at ¶ 19). Such acceleration clauses are widely recognized and enforceable under Illinois law. *See, e.g., Continental Nat'l Bank v. Schiller*, 89 Ill. App. 3d 216, 218, 411 N.E.2d 593, 595 (3d Dist. 1980) (acceleration of an installment note); *Plasti-Drum Corp. v. Ferrell*, 70 Ill. App. 3d 441, 452, 388 N.E.2d 438, 447 (3d Dist. 1979). By filing its original Complaint in this action, FCStone declared an Event of Default and accelerated the full amount of $127,000,000 owing by Adams and Walford.

Put simply, there is no genuine issue of material fact regarding Walford's failure timely to pay to FCStone even the undisputed amount ($101,928) owing from his 2008 New York state tax refund proceeds. It is equally beyond dispute that, under basic principles of contract law, Walford's breach of the Forbearance Agreement entitled FCStone to accelerate the full amount owing under the Promissory Note. Having done so, FCStone is entitled to judgment as a matter of law on Count I against Walford in the amount of $63,500,000, plus interest, costs and attorneys' fees.

## II.     FCStone Is Entitled To Judgment As A Matter Of Law On Count II

For the reasons set forth above, FCStone is also entitled to judgment as a matter of law on Count II against Adams. Again, the Promissory Note expressly provides that an Event of Default occurs as a result of "any failure by Adams *or* Walford to perform his obligations under the Forbearance Agreement." (Stmt. at ¶ 18) (emphasis added). The language of the Promissory Note, therefore, explicitly provides that an Event of Default may occur due to a failure of performance by *either* Adams or Walford. Accordingly, once Walford had breached his obligations under the Settlement Agreement by failing to pay to FCStone even the undisputed

9

amounts owed from his 2008 New York state tax refund, an Event of Default had occurred and FCStone was entitled to its remedies, including the immediate acceleration of the full amount owing under the Promissory Note as against both Adams and Walford.  Thus, FCStone is entitled to judgment as a matter of law on Count II against Adams in the amount of $63,500,000, plus interest, costs and attorneys' fees.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, FCStone respectfully requests that this Court grant its Motion For Partial Summary Judgment, and grant any further relief the Court deems fair and equitable.

DATED:  April 5, 2010                          Respectfully submitted,


<u>s/  Thomas R. Mikrut</u>
Stephen P. Bedell (Attorney No. 3125972)
Dean M. Jeske (Attorney No. 6201378)
Katherine E. Licup (Attorney No. 6288355)
Thomas R. Mikrut (Attorney No. 6290232)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL  60654
312.832.4500

*Attorneys for Plaintiff,*
*FCStone, LLC*

10