# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FCSTONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 508 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| SCOTT A. ADAMS, ROBERT W. WALFORD, SAMANTHA GARBER-ADAMS, and LISA WALFORD, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued Scott A. Adams and Robert W. Walford for breach of contract and all defendants for fraud, conspiracy and a declaration that Samantha Garber-Adams and Lisa Walford are not entitled to one-half of any tax refunds Adams and Walford received. All defendants have filed a motion to stay, Garber-Adams and Lisa Walford have a filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim, and plaintiff has filed a motion for partial summary judgment. For the reasons set forth below, the Court denies the motions.

## Facts

Plaintiff is a futures commission merchant. (Second Am. Compl. ¶ 2.) Defendant Scott Adams ("Adams") is married to defendant Samantha Garber-Adams. (*Id.* ¶ 3.) Defendant Robert Walford ("Walford") is married to defendant Lisa Walford. (*Id.* ¶ 4.) The individual defendants live in New York. (*Id.* ¶¶ 3-6.)

Adams and Walford opened a joint trading account with plaintiff pursuant to an account agreement, which states:

> [Adams and Walford] agree[] to indemnify [plaintiff] and hold [it] harmless from and against any and all liabilities, losses, damages, costs and expenses . . . incurred . . . by [plaintiff] because . . . the agreements made herein by [Adams and Walford] shall not be fully and timely performed, from any action or omission by [Adams and Walford] with respect to the account(s), including but not limited to, any debit and deficit balances which may occur in [Adams and Walford's] account . . . .

(*Id.* ¶ 11; *id.*, Ex. D, Joint Customer Agreement ¶ 5.) Adams and Walford accumulated a deficit in their account of $127 million. (*Id.* ¶ 12.)

On March 11, 2009, plaintiff, Walford and Adams executed a forbearance agreement in which Walford and Adams acknowledged liability for the deficit, and plaintiff agreed not to start collection proceedings if Adams and Walford: (1) executed a $127 million promissory note in plaintiff's favor; (2) prepared their 2008 tax returns and amended their returns for previous years to reflect carry-back losses; and (3) assigned their tax refunds to plaintiff, one-third of which would be applied to the note and two-thirds of which would be used to fund a new trading account, to secure payment of the promissory note. The agreement contains a forum selection clause that states: "The Parties each agree and consent to the exclusive jurisdiction of the state and federal courts in Illinois, in all actions, proceedings and litigation arising from or related directly or indirectly to this Agreement." (*Id.*, Ex. A, Forbearance Agreement ¶¶ 1, 2, 8.)

The same day, Adams and Walford signed a note promising to pay plaintiff $127 million plus interest five years from the day they started trading in the new trading account. (*Id.*, Ex. B, Promissory Note ¶ 2.) Adams' and Walford's failure to perform any of their obligations under the assignments or forbearance agreement is one of the events of default under the note. (*Id.* ¶ 4.)

The assignments Adams and Walford executed pursuant to the forbearance agreement state:

> Assignor assigns to Assignee all of Assignor's interest in the refunds Assignor may be entitled to receive from the Internal Revenue Service in accordance with

> Assignor's United States Individual Income Tax Returns for the years 2008, 2009, and all previous years. . . .
>
> Assignor assigns to Assignee all of Assignor's interest in the refunds Assignor may be entitled to receive from the New York Department of Taxation and Finance or other tax authority in accordance with Assignor's state and city income tax returns for the years 2008, 2009, and all previous years.

(*Id.*, Ex. C, Assignments ¶¶ 2-3.)

In October and November 2009, respectively, Walford received refunds for his 2008 state and federal taxes but did not give any of the money to plaintiff. (Second Am. Compl. ¶ 25.) Moreover, Walford and Adams did not amend their tax returns for the years 2005-07 or open a new trading account. (*Id.* ¶¶ 25-27.)

In December 2009, Garber-Adams and Lisa Walford sued their husbands and plaintiff in New York state court seeking a declaration that their husbands assigned only their own shares of the refunds to plaintiff, and thus, Garber-Adams and Lisa Walford were entitled to half of any refunds received. (*See* Pl.'s Mem. Law Opp'n Garber-Adams & Lisa Walford's Mot. Dismiss, Ex. 7, Compl.)

## Discussion

### Personal Jurisdiction

In determining whether it has personal jurisdiction over Garber-Adams and Lisa Walford, the Court accepts as true "all well-pleaded jurisdictional allegations in the complaint . . . unless [they are] controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). With or without Plaintiff, who had the burden of showing that jurisdiction exists. *Id.*

3

Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only if a court in the forum state would have such jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois courts can "exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c). Because the state and federal standards are not substantively different, *see Hyatt*, 302 F.3d at 715, the Court will address only the federal.

The exercise of personal jurisdiction is proper if the defendant has sufficient "minimum contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 716 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If a defendant has "continuous and systematic general business contacts with the forum," she is subject to that forum's general jurisdiction and can be sued there for any cause of action. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quotation omitted). If defendant's purposeful contacts with the forum are more limited, she is subject to its specific jurisdiction and can be sued there only if the suit arises out of those specific contacts. *Id.*

Plaintiff argues that the Court has specific jurisdiction over Garber-Adams and Lisa Walford by virtue of the forum selection clause in the forbearance agreement. Though neither of them signed the agreement, its forum selection clause can be enforced against them if they are "closely related" to it. *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (quotation omitted).

In the words of the Seventh Circuit, "closely related" is "not an illuminating phrase." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). But, in *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998), the Eleventh Circuit added shed some light on it. That case arose from an agreement between Irmgard and Mitchell Lipcon and Underwriters that required them

4

to settle all disputes arising out their relationship in a British court. *Id.* at 1288. Charles and Barbara Lipcon, Irmgard's and Mitchell's spouses, were not parties to that agreement but signed letters of credit as collateral for Irmgard and Mitchell's obligation. *Id.* Unbeknownst to them, the Lipcons claimed, Underwriters had insured asbestos and pollution risks that resulted in massive losses. *Id.* Thus, the Lipcons sued Underwriters in a Florida court alleging that they had fraudulently exposed the Lipcons to these liabilities in violation of various federal and state laws. *Id.* at 1289. The district court dismissed the suit "concluding that Charles and Barbara Lipcon, who . . . did not sign the [contract containing the forum selection clause], are so closely related to the dispute that they are bound by the . . . clause[]. *Id.* at 1299. The appellate court affirmed:

> [T]o bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound. . . .
>
> Because, as the district court found, the interests of [Charles and Barbara] in this dispute are completely derivative of those of [Irmgard and Mitchell] – and thus directly related to, if not predicated upon the interests of [Irmgard and Mitchell], – we affirm the district court's conclusion that the spouses are bound by the choice clauses.

*Id.* (quotations and citations omitted).

As in *Lipcon*, Garber-Adams and Lisa Walford are so closely related to the forbearance agreement and their husbands' dispute with plaintiff over it that they are bound by the forum selection clause. The heart of the dispute is whether Walford and Adams assigned the full amount of the tax refunds to plaintiff or only their marital shares. If it is the latter, as Walford and Adams contend, Garber-Adams and Lisa Walford will be entitled to keep their own shares of the refunds. Thus, the wives' interests in this dispute are derivative of and identical to those of the husbands – to keep plaintiff from collecting all of the refund money. Given the circumstances, Garber-Adams and Lisa Walford are bound by the forum selection clause, and thus, subject to the personal

5

jurisdiction of this Court. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("[A] valid forum-selection clause, even standing alone, can confer personal jurisdiction.").

**Failure to State a Claim**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In Count III, plaintiff asks for a declaration that Garber-Adams and Lisa Walford are not entitled to half of the tax refunds. The women contend that the premise of this claim, that their husbands assigned all of refund money to plaintiff, is contradicted by the plain language of the documents, each of which limits the assignment to the husbands' portions. (*See* Second. Am. Compl., Ex. C, Assignments (stating that the assignor assigns to plaintiff "all of *Assignor's* interest" in the refunds (emphasis added)).) That argument assumes, however, that the husbands did not have the authority to assign the entire refund amounts, a fact that is not alleged in the complaint or established by the assignments. Thus, Garber-Adams and Lisa Walford's motion to dismiss this claim is denied.

In Counts V and VI, plaintiff asserts claims for promissory fraud and conspiracy to defraud, respectively. Because the latter claim is dependent on the former, *see Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994), the Court will only address the fraud claim.

To state a claim for promissory fraud, plaintiff must allege, among other things, that Garber-Adams and Lisa Walford made a false statement of material fact. *Stamatakis Ind., Inc. v. King*, 520 N.E.2d 770, 772 (Ill. App. Ct. 1987). Plaintiff does not allege that either woman personally made such a statement but contends that their husbands, "act[ing] as [the wives'] agents and co-conspirators," did so. (Second Am. Compl. ¶ 50; *see id.* ¶¶ 36-49.) Garber-Adams and Lisa Walford contend that these allegations are too conclusory to satisfy *Twombly*.

The Court disagrees. An agency relationship exists when one person agrees to have a second person act for him. Restatement (Third) of Agency § 1.01 (2005). A conspiracy is an agreement to commit an illegal act. *Adcock*, 645 N.E.2d at 894. Plaintiff does not explicitly allege that the wives made such agreements with their husbands, but that is a reasonable inference from the marital relationships and the husbands and wives' mutual financial interest in the refund money. Thus, plaintiff has sufficiently alleged the first element of the fraud claim.

A promissory fraud claim also requires that the false statement made as part of scheme to defraud. *See Stamatakis*, 520 N.E.2d at 772. Garber-Adams and Lisa Walford argue that plaintiff's claim is based on only one allegedly false promise, that they would "file amended tax returns and . . . pay any refund money to [plaintiff]," not a fraudulent scheme. (Mem. Law Supp. Garber-Adams & Lisa Walford's Mot. Dismiss 27.)

The Court disagrees. As an initial matter, the "one" promise defendants identify is actually two, to amend the returns and tender the refunds. Moreover, in addition to these promises, plaintiff alleges that Garber-Adams and Lisa Walford filed a sham lawsuit against their husbands in New York, instructed their accountant not to file amended returns, falsely alleged in the New York suit that they had filed amended returns and made false statements in discovery responses in this suit to

7

conceal their actions. (Second Am. Compl. ¶¶ 35-37.) These allegations are sufficient to satisfy the scheme element of promissory fraud. *See Ass'n Benefit Servs., Inc. v. Advanceps Holding Corp.*, No. 04 C 3271, 2004 WL 2101928, at *2 (N.D. Ill. Sept. 21, 2004) (holding that a scheme was adequately alleged by plaintiffs who said that defendants promised to pay commissions at a particular level to induce it to obtain a contract for them); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 683 (Ill. 1989) (holding that defendant's promises of future payment to secure pharmaceutical goods and services alleged a scheme); *Stamatakis*, 520 N.E.2d at 772 (holding that defendant's simultaneous promises to work for and not compete with company he sold to plaintiff and arrangement of post-sale events that would allow him to avoid those promises alleged a scheme).

Garber-Adams and Lisa Walford also argue that the damage element of the claim is lacking. Again, the Court disagrees. Plaintiff alleges that defendants' fraud caused it to refrain from taking any action to collect the money owed to it, which necessarily imposed opportunity costs on it. (Second Am. Compl. ¶ 27); *see Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1369-70 (7th Cir. 1985) (defining "opportunity cost" as the loss of interest or profit that could have been obtained from plaintiff's investment or use of money to which it was entitled), *overruled on other grounds*, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 236 (1991). Thus, plaintiff has adequately alleged that it was damaged by Garber-Adams' and Lisa Walford's alleged conduct.

For all of these reasons, Garber-Adams and Lisa Walford's motion to dismiss is denied.

**Motion to Stay**

All defendants move to stay this suit pursuant to the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976). A stay is appropriate under

that doctrine "in exceptional circumstances when there is a [parallel] state proceeding and the stay would promote wise judicial administration." *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quotation omitted). Two suits are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 686 (quotation omitted). The suits need not be perfectly symmetrical, but there must be a substantial likelihood that the state suit will resolve all of the claims in the federal suit. *Id.*

In the New York suit, Garber-Adams and Lisa Walford each ask for a declaration that she is entitled to half of any tax refunds generated by the amended tax returns. These claims are identical to the declaratory judgment and mistake claims raised here, and would resolve the contract, rescission, fraud, and conspiracy claims based on Adams' and Walford's failure to pay, and assertions that they would not pay, the full amount of the tax refunds. The New York suit would not, however, resolve plaintiff's claims that: (1) defendants breached the forbearance agreement by failing to establish a new trading account or file amended tax returns for 2005-07; (2) Walford breached the agreement by failing to give plaintiff half of the tax refunds he received for 2008; (3) it is entitled to rescind the agreement on the bases set forth in (1) and (2); or (4) defendants are liable for fraud and conspiracy based on the false statements they made in the New York suit and discovery in this case. Because the state court suit will resolve only a portion of the claims raised here, it is not parallel to this one. Thus, there is no basis here for a *Colorado River* stay.

**Partial Summary Judgment**

9

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Plaintiff contends that there is no genuine issue of material fact with respect to its claim that Walford breached the forbearance agreement and promissory note by failing to pay to it any portion of the 2008 tax refund. It is undisputed that the forbearance agreement requires Walford and Adams to: (1) "seek all reasonable federal, state, and city tax refunds available to them" and assign the tax refunds to plaintiff as security for the promissory note; and (2) "cause each refund payment to be paid and applied as provided in [the agreement] and the Assignments." (Second Am. Compl., Ex. A, Forbearance Agreement ¶ 2 c.) Further, the assignments require them to tender the refunds to plaintiff "within 5 business days of receiving [them]." (*Id.*, Ex. C, Assignments.) The promissory note signed by Walford states:

> Each of following shall be considered an Event of Default under this Note: (a) any failure of either Adams or Walford to pay the principal or interest on this Note when due; (b) either Adams or Walford shall generally not pay his debts such debts become due . . . , shall make a general assignment for the benefit of creditors; or any action shall be instituted by or against either Adams or Walford seeking to adjudicate him a bankrupt or insolvent . . . ; (c) any failure by Adams or Walford to perform his obligations under the Forbearance Agreement. Notwithstanding the foregoing, no Event of Default shall be deemed to occur under subsection (a) or subsection (b) unless and until Payee shall have given written notice of such default and Walford and Adams shall fail to cure such default within ten days of such notice.

10

(*Id.*, Ex. B, Promissory Note ¶ 4.) Thus, the plain language of the note exempts plaintiff from the notice and cure requirement for defaults stemming from Adams' and Walford's breach of the forbearance agreement.

It is undisputed that in October and November 2009, respectively, Walford received a New York state tax refund for 2008 in the amount of $305,784.00 and a federal tax refund for 2008 in the amount of $843,846.00. (*See* Pl.'s LR 56.1(a) Stmt. ¶ 22; Defs.' Resp. Pl.'s LR 56.1(a) Stmt. ¶ 22.) It is also undisputed that Walford has not given half of that money, the amount he contends the assignment requires him to pay, to plaintiff.[1] (*See* Pl.'s LR 56.1(a) Stmt. ¶ 24; Defs.' Resp. Pl.'s LR 56.1(a) Stmt. ¶ 24.)

Walford says, however, that his attorney tried to give plaintiff that money on December 3, 2009, and again on December 14, 2009, but plaintiff refused to take it. (*See* Defs.' Resp. Pl.'s LR 56.1(a) Stmt. ¶¶ 24-25; *id.*, Ex. A, Skolnick Decl. ¶¶ 3-11.) Given that refusal, plaintiff's complaint is not that Walford did not tender the money, but that he did not do so within five days of receiving it.

Walford does not deny that he breached five-day tender provision. But he argues that the breach is not material. Under Illinois law, materiality:

> [I]s a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal nonperformance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.

---

[1] Solely for purposes of this motion, plaintiff accepts Walford's interpretation of the assignment.

11

*Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 715 (7th Cir. 1993) (quotation omitted). The parties present conflicting evidence on these issues. (*See* Defs.' Stmt. Add'l Facts ¶¶ 2-3, 5-6, 33-36; Pl.'s Resp. Defs.' Stmt. Add'l Facts ¶¶ 2-3, 5-6, 33-36.) Thus, plaintiff's motion for partial summary judgment must be denied.

### Conclusion

For the reasons set forth above, the Court grants Garber-Adams and Lisa Walford's motion to join Adams and Walford's motion to stay [doc. no. 110] and denies Adams and Walford's motion to stay [doc. no.112], Garber-Adams and Lisa Walford's motion to dismiss [doc. no. 107], and plaintiff's motion for partial summary judgment [doc. no. 118].

**SO ORDERED.**   ENTERED:

**January 6, 2011**

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**